## United States District Court
### District of Massachusetts

C.A. No. 1:22-cv-10702-ADB

Joseph Doe, by his parents and next
  friends James Doe and Jane Doe, and
Casey Roe, by her mother and next friend
Barbara Roe,

      Plaintiffs

v.

Ayla Gavins, Jenerra Williams,
Nakia Keizer, and City of Boston,

      Defendants

## Amended Answer by Jenerra Williams to Amended Complaint[1]

## PARTIES & JURISDICTION

1.    The plaintiff, Joseph Doe (hereinafter "Joseph"), is a minor who is a citizen of the Commonwealth of Massachusetts and resides in the City of Boston.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

2.    The plaintiff, James Doe (hereinafter "Mr. Doe"), is the father of Joseph Doe, and a citizen of the Commonwealth of Massachusetts who resides in the City of Boston.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

3.    The plaintiff, Jane Doe (hereinafter "Ms. Doe"), is the mother of Joseph Doe, and a citizen of the Commonwealth of Massachusetts who resides in the City of Boston.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

4.    The plaintiff, Casey Roe (hereinafter "Casey"), is a minor who is a citizen and a resident of the Commonwealth of Massachusetts.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

5.    The plaintiff, Barbara Roe (hereinafter "Ms. Roe"), is the mother of Casey Roe, and a citizen and a resident of the Commonwealth of Massachusetts.

---

[1] This Amended Answer corrects scrivenors errors in answers to paragraphs 78, 85, and 99 to the original answer filed. It also adds counsel's signature which was inadvertently omitted from the answer.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

6. This action is filed using pseudonyms for the plaintiffs because the allegations include sensitive medical, psychological and personal information about the minor plaintiffs, Joseph Doe and Casey Roe. Given the widespread public discussion regarding the Mission Hill School, which is the subject of this complaint, many community members would readily identify the plaintiffs if their names were used, and they would be subjected to humiliation, embarrassment and retaliation.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

7. The defendant, City of Boston (hereinafter "COB"), is a municipal corporation duly organized and existing under the laws of the Commonwealth of Massachusetts, which, while acting under color of law, is responsible for the formulation and implementation of all official government laws, policies and procedures for the Boston Public Schools (hereinafter "BPS"), and oversees the operation of the BPS through the Boston School Committee.

*Answer by Williams:* Admitted only that the City of Boston is a municipal corporation organized under the laws of Massachusetts. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

8. At all times relevant to this complaint, COB, through its employees and the Mission Hill School Governing Board (hereinafter "Governing Board"), was responsible for the oversight and operation of Mission Hill School (hereinafter "MHS"), a K-8 pilot school located at 20 Child Street in Jamaica Plain, Massachusetts.

*Answer by Williams:* Admitted.

9. At all times relevant to this complaint, the Governing Board was an entity authorized to act on behalf of the COB and the BPS to administer and supervise MHS. The Governing Board was composed of MHS teachers, students, parents, and community representatives and had final authority under color of law to formulate policy for MHS which was delegated to it by COB and BPS.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

10. The defendant, Ayla Gavins "(hereinafter "Ms. Gavins") is a citizen of the Commonwealth of Massachusetts who was at all times relevant to this complaint the principal of the MHS and an employee of COB and/or BPS until she ceased to hold that position in June 2019.

*Answer by Williams:* Admitted only that Gavins was a principal and employee of the Mission Hill School and city of Boston. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

11.    The defendant, Jenerra Williams (hereinafter "Ms. Williams") is a citizen of the Commonwealth of Massachusetts who was at all times relevant to this complaint a teacher at the MHS and an employee of COB and/or BPS.

*Answer by Williams:* Admitted only that Ms. Williams is a citizen of Massachusetts and was a teacher at the MissionHill school and employee of the city of Boston; otherwise denied.

12.    The defendant, Nakia Keizer (hereinafter "Mr. Keizer") is a citizen of the Commonwealth of Massachusetts who was at all times relevant to this complaint a teacher at the MHS and an employee of COB and/or BPS.

*Answer by Williams:* Admitted only that Mr. Keizer is a citizen of Massachusetts and was at some time a teacher at the Mission Hill School and employee of the City of Boston. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

13.    At all times relevant to this complaint, BPS was a recipient of federal financial assistance within the meaning of 20 U.S.C. §1687.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

14.    Jurisdiction of this court is premised on 28 U.S.C. §§1331 and 1343.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

## FACTUAL ALLEGATIONS

### Leadership and Culture at Mission Hill School

15.    As a pilot school, MHS has autonomy over aspects of its operations, including budget, staffing, governance, professional development, curriculum/assessment and school calendar.

*Answer by Williams:* Admitted.

16.    Despite its areas of autonomy, at all times relevant to this complaint, MHS had specifically agreed to comply with BPS civil rights policies and with applicable federal, state and municipal laws, rules, regulations and codes.

*Answer by Williams:* as this paragraph alleges that the Mission Hill School was subject to applicable governing law, the allegation is self-evident and admitted. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

17. At all times relevant to this complaint, MHS was required to adhere to M.G.L. c.71, §37O, the anti-bullying law, and BPS policies entitled "Bullying Prevention and Intervention Plan."

*Answer by Williams:* This paragraph contains legal argument or conclusions to which no answer is required; if any answer is required, the allegations are denied unless and until proven.

18. During Ms. Gavins' tenure as principal at MHS, she deliberately refused to comply with required reporting of bullying incidents and other unsafe behaviors.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

19. During Ms. Gavins' tenure as principal at MHS, she developed a practice of assuring parents that their concerns about safety were being addressed, while taking inadequate action to protect their children. She also developed a pattern of blaming the victims of bullying for the conduct of their aggressors, and of protecting certain children at the expense of others.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

20. Ms. Gavins used her authority and position to create a dangerous and unsafe environment at the MHS in which children, including Joseph and Casey, were continually bullied and subjected to physical and mental harm, including but not limited to: creating inadequate and misdirected plans to respond to safety concerns; placing Joseph and other children in proximity to their tormenters and attackers; sending children, including Joseph, into school areas that were not supervised by adults; suppressing the filing of mandatory incident and bullying reports; concealing the lack of adequate safety plans by falsely claiming that she was protecting another child's civil rights; and placing the blame on Joseph, Casey, and other victims for the actions of the aggressors.

*Answer by Williams:* Denied.

21. As a result of the culture created and fostered by Ms. Gavins, MHS students who were bullied sometimes engaged in similar behaviors toward their aggressors and others, furthering, perpetuating, and increasing the problem of bullying at MHS.

*Answer by Williams:* Denied.

22. As a result of the culture created and fostered by Ms. Gavins, MHS students who were bullied became reluctant to report acts of bullying to teachers because they understood that their aggressors would be protected and feared making the situation worse, or simply because they felt they would not be believed.

    *Answer by Williams:* Denied.

23. As a result of the culture created and fostered by Ms. Gavins, MHS students who were bullied ceased to report acts of bullying because they came to accept repeated physical and mental attacks as a normal part of the school experience.

    *Answer by Williams:* Denied.

24. During Ms. Gavins' tenure as principal at MHS, she affirmatively and actively discouraged staff from filing bullying reports as required by M.G.L. c.71 §37O and BPS policy, in order to protect certain students at the expense of others, and to protect MHS from outside scrutiny and criticism.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven .

25. During Ms. Gavins' tenure as principal, she affirmatively and actively discouraged the reporting and recording of incidents of physical and sexual abuse as required by M.G.L. c.119 §51A, in order to protect certain students at the expense of others, and to protect MHS from outside scrutiny and criticism.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

26. MHS was required to adhere to federal law, including Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794) and the Americans with Disabilities Act (42 U.S.C. §§12101-12103, by creating and implementing Individualized Education Plans for students with identified disabilities and by adopting, enforcing, and adhering to policies of non-discrimination against students with disabilities.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

27. Ms. Gavins oversaw a curriculum that favored social issues and projects at the expense of adequate instruction in core academic areas, and implemented and encouraged methods of student assessment that were designed to conceal the overall lack of educational progress made by students in the school, and to conceal individual students' lack of progress and need for specialized educational services.

    *Answer by Williams:* Denied.

28. During Ms. Gavins' tenure as principal, she affirmatively and actively discouraged staff from evaluating students with learning or behavioral issues and from identifying

students as having disabilities, thereby depriving these students of their rights. Although her stated reason was that there was "an increasing tendency to over diagnose, resulting in disproportionate numbers of young black boys with IEP/504s," her policy of deliberately refusing to comply with special education requirements, including avoiding steps that would result in the development of IEP/504 plans extended to female, non-binary, white, and non-black students as well. To avoid creating formal plans, Ms. Gavins would placate parents by promising that their children would receive services, even though such services could not be provided without such plans and were not in fact provided.

*Answer by Williams:* Denied.

29.  Ms. Gavins adopted and fostered policies for MHS that included minimizing reporting of bullying incidents and avoiding the creation of IEP plans. Her actions created, fostered, and perpetuated a culture of indifference and hostility toward policies and regulations established by BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* Denied.

30.  Ms. Gavins fostered and perpetuated a culture that she stated was intended to protect black boys with behavioral issues from the "school to prison pipeline," which included permitting certain students to engage in bullying and aggressive behavior toward other students without consequence, in violation of policies and regulations established by BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* Denied.

31.  Ms. Gavins perpetuated her educational and social philosophy and belief system by minimizing student safety concerns and deliberately violating policies and regulations established by BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* Denied.

32.  Ms. Gavins deliberately encouraged MHS staff to handle bullying and similar issues "in house" and to report to her rather than to follow BPS protocols and Massachusetts state laws. She would commonly substitute her own judgment about proper responses for that of designated authorities, law enforcement, and policies enacted by BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven..

33.  The MHS Governing Board conducted regular evaluations of Ms. Gavins' job performance and approved of Ms. Gavins' leadership and policies, and recommended that BPS renew her contract. BPS adopted these recommendations and approved the annual renewals.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

34. Ms. Williams and Mr. Keizer had a close and supportive relationship with Ms. Gavins and with each other. The three of them, with a select circle of other MHS staff and parents, formed a "cultlike" culture of loyalists that was founded on perpetuating Ms. Gavins' educational views favoring or advantaging certain students at the expense of others; promoting the belief that children whom they perceived to be privileged based on race, ethnicity, or gender could not be victims of bullying or harassment; protecting the school from outside scrutiny or criticism; retaliating against those who expressed contrary views; and portraying families who raised concerns about their children's safety or other rights in a false light, thereby subjecting them to retaliation both within MHS and from the community.

*Answer by Williams:* Denied.

35. Ms. Williams assisted Ms. Gavins in creating a culture where bullying and sexual assault flourished; discipline was inconsistent, selective, and based on impermissible factors such as race, ethnicity, or retaliation; students with disabilities were provided with inadequate or makeshift accommodations and educational programs; students were placed in dangerous proximity to assaultive peers; aggressive students were protected at the expense of their victims; and parents who expressed concerns were misled, marginalized, ignored and subjected to retaliation both within MHS and from the community, all in violation of policies and regulations of BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* Denied.

36. Mr. Keizer assisted Ms. Gavins in creating a culture where bullying and sexual assault flourished; discipline was inconsistent, selective, and based on impermissible factors such as race, ethnicity, or retaliation; students with disabilities were provided with inadequate or makeshift accommodations and educational programs; students were placed in dangerous proximity to assaultive peers; aggressive students were protected at the expense of their victims; and parents who expressed concerns were misled, marginalized, ignored and subjected to retaliation both within MHS and from the community, all in violation of policies and regulations of BPS and the Commonwealth of Massachusetts.

*Answer by Williams:* Denied.

## Investigations and Recent Closure of the Mission Hill School

37. Ms. Gavins' conduct as principal of MHS was the subject of complaints and an independent investigation conducted by Attorney Joseph Coffey in 2015 at the request of then Superintendent John McDonough. Attorney Coffey concluded, inter alia, that Ms. Gavins' failures, inactions, and omissions with respect to the provision of special education services to MHS students constituted conduct unbecoming a principal and

warranted discipline.

*Answer by Williams:* Admitted only that Coffey conducted an investigation. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

38. Despite the findings and recommendations in the 2015 Coffey report, the Governing Board and BPS failed to discipline or otherwise control Ms. Gavins' improper practices and permitted Ms. Gavins to continue the conduct that had been the subject of the investigation.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

39. The Massachusetts Department of Elementary and Secondary Education also conducted four separate investigations regarding Joseph's experience at MHS, and found that:

a. MHS failed to comply with bullying laws;

b. MHS failed to implement an appropriate 504 plan for Joseph;

c. MHS improperly secured Joseph's student records and permitted unlawful access to those records; and

d. MHS failed to provide timely access to student records.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

40. In 2021, BPS Superintendent Brenda Cassellius ordered another independent investigation, which was also performed by Attorney Joseph Coffey. Attorney Coffey's June 10, 2021 report is attached as Exhibit "A" and incorporated herein by reference. Attorney Coffey was asked specifically to address Ms. Gavins' handling of bullying incidents involving Joseph and her failure to implement disability accommodations as required by his 504 plan. Attorney Coffey again concluded that Ms. Gavins had committed numerous acts of negligence, violations of law, and indifference to student safety, and retaliation, and again found that she had engaged in conduct unbecoming a principal.

*Answer by Williams:* Admitted only that Attorney Joseph Coffey made an investigation of the Mission Hill School. The best evidence of a document's contents is the document itself. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

41. In September 2021, Superintendent Cassellius engaged the law firm of Hinckley Allen to conduct yet another investigation into allegations of misconduct by Ms. Gavins and others at MHS, including their handling of bullying, sexual misconduct and/or

sexual assaults, and their treatment of students with disabilities.

*Answer by Williams:* Admitted only that the superintendent engaged the law firm Hinckley Allen to investigate allegations about the Mission all school. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

42. On April 25, 2022, BPS released a redacted version of Hinckley Allen's Phase I investigative report (hereinafter "HA Report I") entitled "Investigation Conducted on Behalf of the Boston Public Schools Regarding Allegations of Inadequate Leadership and a Number of Safety Concerns, Including Bullying, Sexual Abuse, and an Unsafe Environment." The report is publicly available on the BPS website at April 27, 2022 Presentations and Materials (bostonpublicschools.org),[2] and its findings are incorporated by reference.

*Answer by Williams:* Admitted only that Hinckley Allen's phase I investigative report was publicly available. Otherwise denied.

43. Upon information and belief, the individual defendants are referred to throughout HA Report I as MH Admin 3 (Principal Ayla Gavins), MH Staff 2 (Jenerra Williams) and MH Staff 6 (Nakia Keizer).

*Answer by Williams:* Admitted only as to MH staff 2. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

44. The Hinckley Allen Phase I report concluded, inter alia, that:

a. MHS "[took] advantage of its autonomous status ... to effectively substitute the School's judgment and that of MH Admin 3 and [her] loyal staff, for that of parents, the District, and state regulators in a manner that prevented students with various behavioral and emotional needs from receiving the support and attention they required."

b. MH Admin 3 "was resistant to external criticism, to internal dissent, to change, as well as to District input or intervention."

c. MHS "systematically failed to identify, document and address pervasive reports of bullying by students in contravention of Massachusetts law and District policies. Mission Hill School's failure to implement a standard approach to addressing bullying concerns—and its "hands-off" attitude toward such concerns—normalized student-on-student violence and allowed pervasive bullying to continue, in some

---

[2]

https://www.bostonpublicschools.org/site/default.aspx?PageType=3&DomainID=162&ModuleInstanceID=13111&ViewID=6446EE88-D30C-497E-9316-3F8874B3E108&RenderLoc=0&FlexDataID=37386&PageID=254

cases for years, including by serial bullies who repeatedly targeted other students without discipline or effective intervention."

d.   MHS "consistently under-identified specialized needs and under-delivered special education services to students who required them" which derived "in large part from MH Admin 3 disregard for—and, in one notable instance, conscious attempt to defy—various laws and District policies that imposed rigorous requirements for the School to deliver IEP, Child Find, and ESL/ELL-related services."

e.   "MH Admin 3 fostered a culture of non-compliance around special education requirements" and the MHS evidenced "general indifference, if not disdain, for identifying and designating children with special needs, even when it is legally required and appropriate to do so."

f.   MHS failed to promote and foster a culture that ensured safety, support, and full inclusion of all students—including gender non-conforming students—and failed to provide equal access to the School's educational opportunities" and "denied several gender non-conforming students equal access to educational opportunities, which directly violates the guarantees put in place in [BPS policies] ETQ-2 and ETQ-4."

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

45.   During the time Joseph and Casey were students at MHS, MHS maintained a separate private email domain on a Google Drive, @missionhillschool.org, which was accessed by MHS staff using Gmail accounts, rather than their official BPS email accounts.

*Answer by Williams:* Insofar as this paragraph alleges or implies any wrongdoing, it is denied. It was well known for many years that the Mission Hills School, like many other organizations, public and private, used a Google-based email system. This practice was originally adopted upon recommendation of MHS information technology staff.

46.   Under Ms. Gavins' leadership, MHS staff were encouraged to use the @missionhillschool.org to keep separate files about certain students and to communicate among themselves and with parents and families to avoid oversight, scrutiny, and criticism from BPS, the BSC, and others.

*Answer by Williams:* Denied.

47.   Ms. Gavins continued to access the @missionhillschool.org server even after her employment with BPS had ended, which access was in violation of law.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

48. Immediately after the 2021 Coffey investigation report was released, Ms. Williams and others deleted a number of email accounts, including Ms. Gavins' account and the accounts of two MHS staff members who had been outspoken in their criticism of Ms. Gavins, resulting in the Hinckley Allen investigators' inability to access emails that these accounts had sent outside the MHS domain.

    *Answer by Williams:* Admitted only that Ms. Williams deleted email accounts of certain Mission Hill School personnel because they were no longer working at the school. Otherwise denied.

49. The paper and electronic documents provided to Hinckley Allen contain gaps, missing records, and incomplete, false, and misleading information, making a full and accurate reconstruction of the extent of the abuse and malfeasance that occurred at the school difficult or impossible.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

50. Based on the findings in HA Report I, including the investigators' conclusion that, "notwithstanding changes in leadership, the deleterious effects of that culture [created by Ms. Gavins and her loyal staff] remain at the School," Superintendent Cassellius recommended to the BSC on April 27, 2022 that MHS be closed.

    *Answer by Williams:* The best evidence of the contents of the document referred to is the document itself. The document's quoted allegations are denied unless and until proven.

51. On May 5, 2022, the BSC voted to adopt Superintendent Cassellius' recommendation and to close Mission Hill School.

    *Answer by Williams:* Admitted.

### Joseph Doe's Experience at MHS

52. Joseph entered first grade at MHS midway through the school year 2014-2015, and remained a student through the end of September, when he was in sixth grade.

    *Answer by Williams:* Admitted.

53. MHS uses a two-grade classroom system which joins a lower and an upper grade in the same classroom with the same teacher.

    *Answer by Williams:* Admitted.

54. During his attendance at MHS, Joseph exhibited signs of a disability, including an inability to read social cues, attention deficit hyperactivity disorder, and neurologic sequelae of a traumatic brain injury.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

55. During his time at MHS, Joseph was the victim of disability-based discrimination, harassment and bullying by both staff and students.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

56. During his time at MHS, Joseph was the victim of gender-based discrimination, harassment and bullying by both staff and students at MHS.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

57. During his time at MHS, Joseph was the victim of repeated and continual bullying at the hands of his classmates and even certain members of the MHS staff.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

58. During Joseph's first-grade year, 2014-2015, he suffered a series of bullying incidents at the hands of other MHS students, including being pushed to the ground, hit on the back of the head, taunted to fight by a group of students on the MHS playground, and stabbed on the side of his face with a pencil.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

59. During Joseph's second-grade year, 2015-2016, he suffered a series of bullying incidents at the hands of other MHS students, including being hit, punched and kicked, having balls thrown at him, being hit with a chair thrown by another student, and having his hair pulled.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

60. On April 6, 2016, Joseph suffered a traumatic brain injury ("TBI"), skull fracture, and concussion in the MHS gymnasium under circumstances that have never been adequately explained or investigated.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

61. Joseph was treated at Children's Hospital for his injuries, including an overnight stay in the intensive care unit. The treating physician recommended that Joseph should have a 504 plan for academic accommodations, and that he was to avoid any activity more strenuous than walking, and in particular, was at serious risk if subjected to fur-

ther head jostling or impacts.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

62.   Mr. and Mrs. Doe informed Ms. Gavins of the physician's recommendations and requested a safety plan for Joseph to avoid activity and further head injury or impacts to the head, but Ms. Gavins nevertheless permitted Joseph to engage in dangerous activity levels and to receive repeated head trauma.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

63.   On April 8, 2016, Ms. Gavins falsely stated to Mr. and Mrs. Doe that she had investigated the incident and found that no one was at fault.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

64.   Available documentation shows that Ms. Gavins did not begin an investigation until after she had told the Does that no one was at fault, and that her investigation consisted of asking a few staff members, whose responses were not located during the investigations.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

65.   Ms. Gavins affirmatively promised Mr. and Mrs. Doe that she would provide Joseph with accommodations that would be superior to a 504 plan, including a one-on-one aide to assure Joseph's safety as he recovered from the TBI.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

66.   Ms. Gavins broke the promise she had made to Mr. and Mrs. Doe to provide such an aide, and never provided one-on-one assistance for Joseph.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

67.   In the six weeks following his TBI, Joseph received hits to his head inflicted by other MHS students on six separate occasions, thereby subjecting him to further injury and long-term consequences.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

68.  In keeping with her stated policy to minimize the creation of IEPs and 504 plans, Ms. Gavins decided not to create a 504 plan for Joseph, despite the advice of the physicians who treated his head injury.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

69.  The incidents during 2015-2016 also included bullying of Joseph based on his gender-nonconforming appearance, including long hair and clothing in styles and colors more traditionally associated with females.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

70.  The gender-based bullying included students telling Joseph that he needed to cut his hair and calling him "Miss."

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

71.  In the middle of the 2015-2016 year, Mrs. Doe and other parents of MHS first- and second- graders attended a community meeting to discuss safety concerns at the school. Ms. Gavins minimized and dismissed their concerns and assured them that MHS was providing a safe school environment.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

72.  In mid-June 2016, Joseph was physically attacked by a group of his classmates.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

73.  On June 21, 2016, Ms. Gavins acknowledged that Joseph had been the victim of "a string of incidents," but justified the attacks, defended the attackers, and blamed Joseph, saying that he was "struggling to self-regulate and failing to read social cues."

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

74.  Ms. Gavins' actions in protecting and defending Joseph's attackers encouraged, enabled and emboldened them, and resulted in continued and escalating attacks throughout his remaining time at MHS.

*Answer by Williams:*  The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

75. On June 30, 2016, Mr. and Mrs. Doe participated in a meeting with Ms. Gavins to express their concern about bullying incidents at MHS and fears for Joseph's safety.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

76. At the June 30, 2016 meeting, Ms. Gavins dismissed the Does' concerns, stating "safety can mean a lot of things to different people."

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

77. During Joseph's third-grade year, 2016-2017, he suffered a series of bullying incidents including at least seven documented incidents including other students pulling his hair, punching, pushing, hitting, striking his nose, and striking his head.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

78. The day following one serious incident on May 15, 2017, Ms. Doe emailed Williams about her concerns that the student attacker had a history of violence toward Joseph. She also raised concerns about Joseph's disability stemming from his TBI and concussion.

   *Answer by Williams:* Admitted only that Ms. Williams received an email on May 15, 2017. The best evidence of a document's contents is the document itself. Otherwise, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

79. During the school year 2016-2017, Ms. Gavins deliberately suppressed the creation of incident reports to create the impression with the Governing Board and others that she had met a goal set for her to reduce the number of incidents among students.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

80. During Joseph's fourth-grade year, 2017-2018, he suffered continued bullying, including pushing, slapping, punching, kicking, taunting, and gender-based teasing about his shoes, clothes, and long hair.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

81. The severity of the incidents, which included an assault and improper restraint on Joseph by MHS paraprofessional Amina Michel-Lord and a kick to Joseph's head by another student on May 11, 2018, led Mr. and Mrs. Doe to request home schooling for Joseph to keep him safe for the rest of the year.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

82. The approval of the request for home schooling was delayed for several weeks, during which Joseph was subjected to additional incidents of bullying and physical and emotional harm.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

83. During Joseph's fifth-grade year, 2018-2019, he suffered continued and escalating bullying, including being pushed against a bathroom wall and choked, threatened by a student that he would "f you up," and threatened by another student that he would bring a gun to school to kill Joseph. The bullying incidents also included other students pushing, slapping, punching, kicking, and taunting Joseph, as well as gender-based teasing about his shoes and clothes and pulling off the hat or bandanna that he wanted to wear to cover his hair. He was also followed after school by students who threatened him, and hit with a chair by another student.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

84. The incidents in Joseph's fifth-grade year included an assault by Joseph's classroom teacher, Mr. Williams, who struck Joseph on the head with a cell phone and refused to allow him to see the nurse, and bullying that included organizing the rest of the class to participate in group activities mocking and taunting Joseph

   *Answer by Williams:* Denied.

85. At the beginning of Joseph's six-grade year, 2019-2020, he was bullied on a daily basis until the BPS admitted that Joseph was not safe at MHS and he was transferred to another pilot school.

   *Answer by Williams:* Denied. The reason Joseph was forced to leave the Mission Hill School was because he assaulted other students by asking them whether they were allergic to nuts, and then eating nuts and blowing his breath in the face of students who were allergic. As a result of Joseph's assault, one student was taken to the hospital for emergency medical treatment, and the student obtained a harassment prevention order against Joseph. This was the reason Joseph's parents removed him from the Mission Hill School.  .

86. At various times during his attendance at MHS, Joseph was targeted by other students on account of his gender non-conforming appearance, including his choice of clothes and hairstyle.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

87.  MHS had a pattern of tolerating, encouraging, and enabling bullying and mistreatment of gender non-conforming students by both other students and staff members.

     *Answer by Williams:* Denied.

88.  There are a large number of times where contemporaneous documentation, such as nurse's records or emails, describe injuries to Joseph for which there are no MHS incident reports or other documentation.

     *Answer by Williams:* The best evidence of a document's contents is the document itself. The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

89.  On one occasion when questioned by the Does about the lack of incident reports or notification to parents that Joseph was being injured at school, Ms. Gavins stated that, "If I did an incident report every time he got hurt, I would be doing it all the time."

     *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

90.  When asked for his assistance in ensuring that other staff members did not single Joseph out for unwanted attention in a group setting, Mr. Keizer told Mrs. Doe that "[i]t's pretty hard for me to advocate with other staff as they see [Joseph] as a white kid with social capital."

     *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

91.  Although the lack of proper documentation at MHS makes full reconstruction of incidents involving Joseph difficult or impossible, available records, summarized in Exhibit "B" show the following:

     a.  Joseph suffered physical or mental trauma at the hands of other students on at least 40-45 occasions during his time at MHS;

     b.  Joseph was the victim of impacts to his head and neck at least 30-35 times, many of which occurred following a significant head injury that also occurred at MHS;

     c.  Joseph suffered harm from other students for which he did not receive medical or nursing attention or evaluation on at least 10-15 occasions;

     d.  Joseph suffered harm from other students which was concealed from the Does by the staff at MHS on at least 20-25 occasions;

     e.  Joseph's parents directed at least 25 communications to Ms. Gavins, 22 communications to Mr. Keizer, 15 communications to Ms. Williams, and 23 communications to others within BPS expressing their concerns about Joseph's safety and academic difficulties due to his disabilities.

    f.    Parents of other students expressed concern to Ms. Gavins and other MHS staff that their children were bullying Joseph on at least two occasions.

    g.    In the fall of 2018, Mr. and Mrs. Doe elevated their concerns about the pervasive and continual bullying Joseph was experiencing at MHS to BPS leadership, including Superintendent Al Taylor.

*Answer by Williams:* The best evidence of the contents of a document is the document itself; the allegations referred to in the document are denied unless and until proven.

92.    In addition to the written documentation, Mr. and Mrs. Doe were present at MHS, both inside and outside the school, on a daily basis, where they observed various student and faculty behaviors described in this complaint, and communicated their concerns to MHS staff members.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

93.    Mr. and Mrs. Doe learned that Ms. Gavins had created entries in Joseph's student record falsely stating that he had committed suspendable disciplinary violations. When they questioned Ms. Gavins, she threatened to hold a disciplinary hearing against Joseph and warned the Does that "When you get the Superintendent's office involved that is what happens."

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

94.    Ms. Gavins created fourteen additional false and backdated entries in Joseph's student record in March 2019 as further retaliation for the Does' expressed concerns about her handling of the frequent bullying of Joseph and her mishandling of his 504 plan.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

95.    BPS and MHS eventually acknowledged that eighteen entries were improperly created and entered in Joseph record. These entries were expunged, but not until Joseph had suffered mental and emotional harm, harm to his reputation, and difficulty in obtaining appropriate school placement as a result of the entries.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

96.    In July 2016, Joseph had been formally diagnosed with ADHD, Specific Learning Disability, with a significant weakness in processing speed. Although this information was communicated to the school, Ms. Williams falsely told the Does that Joseph's disabilities could be adequately managed in her inclusion classroom without a formal

IEP or 504 plan.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in the first sentence; they are denied unless and until proven.

97. A Section 504 disability accommodation plan was finally created for Joseph on November 17, 2018 (two and a half-years after the Children's Hospital recommendation), requiring fifteen accommodations for Joseph.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in the first sentence; they are denied unless and until proven.

98. The staff at MHS, including Ms. Gavins, Ms. Williams, and Mr. Keizer, deprived Joseph of the free and appropriate education to which he was entitled by federal law by selectively implementing his 504 plan.

*Answer by Williams:* Denied.

99. As a result of the harm Joseph suffered at MHS, Mr. and Mrs. Doe arranged to transfer him to another BPS pilot school in September 2019.

*Answer by Williams:* Denied. The reason Joseph was forced to leave the Mission Hill School was because he assaulted other students by asking them whether they were allergic to nuts, and then eating nuts and blowing his breath in the face of students who were allergic. As a result of Joseph's assault, one student was taken to the hospital for emergency medical treatment, and the student obtained a harassment prevention order against Joseph. This was the reason Joseph's parents removed him from the Mission Hill School.

100. Due to his disabilities and the inability of BPS to meet his needs, Joseph was eventually approved for placement in a private out-of-district school, where he started as a student in January 2020.

*Answer by Williams:* Denied as to the inability of BPS to meet Joseph's needs. As to the remainder, the defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

101. As a result of actions, inactions and failures at MHS, Joseph was unable to access appropriate educational services, and has been left with deficiencies in his education that are difficult to remedy, have required that he be separated from his friends and siblings, and have caused him to be humiliated and embarrassed by comments from people in the community.

*Answer by Williams:* Denied.

102. As a result of actions, inactions and failures at MHS, Joseph has required extensive medical and psychological treatment for the injuries inflicted upon him.

*Answer by Williams:* Denied.

103. As a result of actions, inactions and failures at MHS, Joseph has been deprived of the ability to enjoy normal social interactions and the ability to participate in ordinary activities.

*Answer by Williams:* Denied.

104. Joseph's educational and social difficulties, including the physical and emotional abuse he suffered at the school were well-known to Ms. Gavins, who was the principal of MHS through the end of Joseph's fifth-grade year.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

105. Joseph's educational and social difficulties, including the physical and emotional abuse he suffered at the school were well-known to Ms. Williams, who was a teacher at MHS throughout Joseph's period of attendance and who was his classroom teacher in first grade (2014-2015), third grade (2016-2017), and fourth grade (2017-2018).

*Answer by Williams:* Admitted only that Ms. Williams was Joseph's classroom teacher in the first, third, and fourth grade and was familiar with Joseph as one of her students. Otherwise denied.

106. Joseph's educational and social difficulties, including the physical and emotional abuse he suffered at the school were well-known to Mr. Keizer, who was a teacher at MHS throughout Joseph's period of attendance and who was his classroom teacher in fifth grade (2018-2019).

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

## Casey Roe's Experience At MHS

107. The plaintiff, Casey Roe, repeats, realleges and incorporates herein paragraphs 1 through 106 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The defendant incorporates and realleges all preceding answers.

108. At all times relevant to this complaint, Casey suffered from numerous medical, behavioral, and emotional disabilities and conditions, which made her eligible for and entitled to special education services to be provided under an Individualized Education Plan ("IEP"). These conditions included dyslexia, food allergies, sensory deficits, vision problems, mood disorder, ADHD, and high impulsivity with difficulty in regulating her emotions and behavior.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

109. Casey is a child of mixed African-American and Puerto Rican race and ethnicity.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

110. Prior to applying for a seat at MHS for Casey, Ms. Roe had heard favorable reviews from other parents about the educational and social atmosphere at MHS.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

111. Ms. Roe was also attracted to MHS because it had a full-time school nurse who could presumably attend to Casey's multiple medical needs.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

112. When Ms. Roe toured MHS before enrolling Casey at the school, she met Ms. Gavins, who told her, "We do things differently here. If you don't like it, go down the street."

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

113. During her time at MHS, Casey was the victim of disability-based discrimination, harassment and bullying by other students.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

114. During her time at MHS, Casey was the victim of gender-based discrimination, harassment and bullying by other students.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

115. During her time at MHS, Casey was the victim of repeated and continual bullying at the hands of her classmates.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

116. Casey entered Kindergarten-0 at MHS as a special education student in the fall of 2012, and was placed in Geralyn McLaughlin's class.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

117. Ms. Roe withdrew Casey from Kindergarten-0 after a few weeks because she had difficulty controlling her behavior and was the subject of bullying and abuse by other children.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

118. Casey re-entered MHS in February 2014, and was placed in Jada Brown's Kindergarten-1 class.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

119. Ms. Roe was frequently present in Ms. Brown's Kindergarten-1 classroom and was able to observe interactions between Casey and other students.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

120. During the spring of 2014, Casey was subjected to verbal and physical abuse from other students. This included two classmates, N. and K., who repeatedly called her a "fucking bitch."

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

121. Ms. Roe spoke with Ms. Brown on multiple occasions trying to assure that Casey was not in close proximity to N. and K., who repeatedly bullied her and called her names.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

122. Casey attended MHS for the 2014-2015 school year, and was placed in Jada Brown's Kindergarten-2 class.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

123. Ms. Roe was frequently present in Ms. Brown's Kindergarten-2 classroom and was able to observe interactions between Casey and other students.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

124. During the 2014-2015 year, Casey was subjected to verbal and physical abuse from other students, including N., who repeatedly called her a "fucking bitch," and K., who with other students, was physically aggressive toward Casey on a regular basis.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

125. K. was much larger than other students, and was frequently abusive and violent to Casey and other students.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

126. Ms. Roe repeatedly expressed to Ms. Brown that she was concerned about Casey's safety, because Casey was frequently involved in aggressive physical incidents with N. and K.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

127. One of the other students placed in Casey's Kindergarten-2 class was A., a first-grade student whose conduct has been the subject of a previous lawsuit filed in this court.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

128. A. repeatedly harassed Casey on the school grounds while they were outside, including asking to see her underwear, asking her to kiss him, trying to kiss her, physically holding her down, and removing her shoes so she couldn't run away from him.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

129. Ms. Roe reported A.'s conduct to the MHS staff. The only response Ms. Roe ever saw was that A. was given a "time out" to sit on a bench.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

130. Ms. Roe reported A.'s conduct, including his efforts to kiss Casey, to Ms. Gavins, who excused his conduct by stating that "A. has problems."

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

131. During the spring of 2015, boys started exposing themselves regularly in the presence of Casey and other female students, in the school halls and on various places on the playground.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

132. Casey began the 2015-2016 school year at MHS, and was placed in Kate Needham's first/second grade combined class.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

133. Ms. Needham lacked the experience and support to manage the difficult children in the classroom, which put the safety of Casey and other children in jeopardy.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

134. As a result of the lack of experience and support in the classroom, and the aggressive nature of other students, the harassment and bullying that Casey experienced escalated significantly during the year.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

135. Ms. Roe informed Ms. Gavins on several occasions that the first/second grade classroom had inadequate supports and was a dangerous and abusive environment for children, including Casey.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

136. In fall 2015, Casey suffered bullying and sexual harassment on nearly a daily basis, including but not limited to:

    a. Boys pulled her pants down during and after school;

    b. J., a classmate, urinated in Casey's cubby;

    c. K. punched Casey in the stomach, causing her to vomit;

    d. N. hit Casey, called her stupid and a "fucking bitch," taunted her with her middle finger, and hit her in the head;

    e. J. pushed Casey down the stairs.

    *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

137. When Ms. Roe reported these acts of bullying and harassment to Ms. Gavins, she replied, "I don't know what you want me to do." She also claimed that the school wasn't responsible for playground incidents after school.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

138. Ms. Gavins also blamed Casey's disabilities for her mistreatment at the hands of other children, saying that "[Casey] doesn't know when to stop."

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

139. Rather than separating the girls or protecting Casey with a safety plan or otherwise, Ms. Gavins forced Casey to participate in a "friendship" club with two of her attackers, J. and N.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

140. After the "friendship" club, J. and N. increased their physical aggression toward Casey.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

141. Ms. Roe also expressed to Ms. Gavins' repeated concerns about Casey's lack of academic progress, receiving repeated assurances that Casey's IEP was appropriate, and that Casey, as other children, would learn at her own pace.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

142. Casey was determined to be in need of additional reading services as a result of an evaluation in fall 2015, but these services were never provided to her.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

143. During her time at MHS, Casey had multiple recorded visits to the school nurse, many of which resulted from attacks by other children.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

144. In addition, there were many other times when Casey did not receive medical attention after an incident, and Ms. Roe was not notified that there had been an incident.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

145.   At various times during her attendance at MHS, Casey was targeted by other students on account of her gender and disabilities.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

146.   MHS had a pattern of tolerating, encouraging, and enabling bullying and mistreatment of girls by boys of similar and older ages.

*Answer by Williams:* Denied.

147.   MHS had a pattern of tolerating, encouraging, and enabling bullying and mistreatment of students with disabilities.

*Answer by Williams:* Denied.

148.   Throughout Casey's time at MHS, Ms. Roe was present at and inside the school on nearly a daily basis to bring Casey to and from school.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

149.   Throughout Casey's time at MHS, during her daily drop-off and pickup visits, Ms. Roe brought concerns to the attention of Ms. Gavins and others, including sexualized aggressions, verbal abuse and use of obscene language, and physical attacks.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

150.   As a long-time BPS employee who has worked in a number of other elementary schools, Ms. Roe is familiar with the normal environment in Boston schools.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

151.   Ms. Roe found the environment at MHS to be very different from other BPS facilities, in its disorganization, lack of supervision for students, physical aggression among students, and verbal abuse inflicted by students on each other.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

152.   Ms. Roe removed Casey from MHS in spring of 2016, and moved the family to a suburban school district.

***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

153. On Casey's first day in her new school, she reported to her mother that "No one hit me today."

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

154. Casey suffered physical or mental trauma at the hands of other students on dozens of occasions during her time at MHS, which was often not reported to Ms. Roe, and for which she did not receive medical attention.

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

155. As a result of actions, inactions and failures at MHS, Casey was unable to access appropriate educational services, and has been left with deficiencies in her education that have caused her to be humiliated and embarrassed by comments from people in the community.

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

156. As a result of actions, inactions and failures at MHS, Casey has required extensive medical and psychological treatment for the injuries inflicted upon her.

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

157. As a result of actions, inactions and failures at MHS, Casey has been deprived of the ability to enjoy normal social interactions and the ability to participate in ordinary activities.

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

158. Casey's educational and social difficulties, including the physical and emotional abuse she suffered at the school were well-known to Ms. Gavins, who was the principal of MHS throughout Casey's time as a student at MHS.

      ***Answer by Williams:*** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

## JOSEPH DOE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 – GAVINS

159. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The defendant repeats and incorporates her preceding answers.

160. At all times relevant to this complaint, Ms. Gavins acted under the color and pretense of law, with the actual and apparent authority of the City of Boston, the Boston School Committee, and the MHS Governing Board.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

161. Ms. Gavins used her authority and position to create a dangerous and unsafe environment at the MHS in which Joseph was continually bullied and subjected to physical and mental harm, including but not limited to: disregarding BPS oversight and policies, minimizing safety concerns: minimizing the impact of Joseph's head injury to the school nurse, Joseph's teachers and other staff; creating inadequate plans for Joseph's safety; placing Joseph in proximity to his tormenters and attackers; suppressing the filing of mandatory incident and bullying reports; placing the blame on Joseph for the actions of other children; and creating a situation where Joseph and his family were subjected to community retaliation and hostility.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

162. Joseph's right to attend school in an environment where bullying was not tolerated and was addressed firmly, promptly and aggressively in a consistent manner was clearly established by M.G.L. c.71 §37O and the BSC and state policies and regulations promulgated in accordance with that statute.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

163. Ms. Gavins retaliated against Joseph and his parents for raising issues about bullying, gender-based discrimination, and disability discrimination, by creating false entries in his student record.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

164. Ms. Gavins acted with deliberate indifference or willful disregard to deprive Joseph, under color of law of his rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from in-

trusion into his bodily integrity and to receive a public education.

***Answer by Williams:*** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

165. The harm suffered by Joseph was a foreseeable result of Ms. Gavins' actions, and was a direct and proximate result of such actions.

***Answer by Williams:*** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

166. As a result of Ms. Gavins' actions, Joseph suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

***Answer by Williams:*** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

## JOSEPH DOE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 – WILLIAMS

167. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

***Answer by Williams:*** The defendant realleges and incorporates her preceding answers.

168. At all times relevant to this complaint, Ms. Williams acted under the color and pretense of law, with the actual and apparent authority of the City of Boston, the Boston School Committee, and the MHS Governing Board.

***Answer by Williams:*** Denied.

169. Ms. Williams used her authority and position to create a dangerous and unsafe environment at the MHS in which Joseph was continually bullied and subjected to physical and mental harm, including but not limited to: creating inadequate plans for Joseph's safety, placing Joseph in proximity to his tormenters and attackers, suppressing the filing of mandatory incident and bullying reports, and placing the blame on Joseph for the actions of other children.

***Answer by Williams:*** Denied.

170. Joseph's right to attend school in an environment where bullying was not tolerated and was addressed firmly, promptly, and aggressively in a consistent manner was clearly established by M.G.L. c.71 §37O and the BSC policies promulgated in accordance with that statute.

*Answer by Williams:* Denied.

171. Ms. Williams acted with deliberate indifference or willful disregard to deprive Joseph, under color of law of his rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from intrusion into his bodily integrity and to receive a public education.

*Answer by Williams:* Denied.

172. The harm suffered by Joseph was a foreseeable result of Ms. Williams' actions, and was a direct and proximate result of such actions.

*Answer by Williams:* Denied.

173. As a result of Ms. Williams' actions, Joseph suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

*Answer by Williams:* Denied.

## JOSEPH DOE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 – KEIZER

174. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The defendant incorporates and realleges her preceding answers.

175. At all times relevant to this complaint, Mr. Keizer acted under the color and pretense of law, with the actual and apparent authority of the City of Boston, the Boston School Committee, and the MHS Governing Board.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

176. Mr. Keizer used his authority and position to create a dangerous and unsafe environment at the MHS in which Joseph was continually bullied and subjected to physical and mental harm, including but not limited to: creating inadequate plans for Joseph's safety, placing Joseph in proximity to his tormenters and attackers, suppressing the filing of mandatory incident and bullying reports, and placing the blame on Joseph for the actions of other children.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

177. Joseph's right to attend school in an environment where bullying was not tolerated and was addressed firmly, promptly, and aggressively in a consistent manner was clearly established by M.G.L. c.71 §37O and the BSC policies promulgated in accordance with that statute.

    *Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

178. Mr. Keizer acted with deliberate indifference or willful disregard to deprive Joseph, under color of law of his rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from intrusion into his bodily integrity and to receive a public education.

    *Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

179. The harm suffered by Joseph was a foreseeable result of Mr. Keizer's actions, and was a direct and proximate result of such actions.

    *Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

180. As a result of Mr. Keizer's actions, Joseph suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

    *Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

## JOSEPH DOE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 – CITY OF BOSTON

181. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

    *Answer by Williams:* The defendant incorporates and realleges her preceding answers.

182. The COB, BSC, and the Governing Board were deliberately indifferent to or tacitly authorized the wrongful conduct by continuing to permit MHS to exercise autonomy, renewing Ms. Gavins' contract as principal, ignoring, and condoning the unsafe conditions at MHS, including frequent and repetitive assaults on Joseph and other students, refusing to take action in response to notice of problems at MHS, including but not limited to the 2015 Coffey report, and by failing to prevent further incidents.

    *Answer by Williams:* Denied.

183. The COB, BSC, and the Governing Board failed to train and supervise their employees, including but not limited to the individual defendants, causing physical and emotional injury to Joseph.

   *Answer by Williams:* Denied.

184. The actions and inactions of the COB, BSC and the Governing Board were part of a custom or policy that caused physical and emotional injury to Joseph.

   *Answer by Williams:* Denied.

185. As a consequence of the customs and policies of the COB, the BSC and the Governing Board, Joseph was deprived, under color of law, of his rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from intrusion into his bodily integrity and to receive a public education.

   *Answer by Williams:* Denied.

186. The harm suffered by Joseph was a foreseeable result of the customs and policies of the COB, the BSC, and the Governing Board, and was a direct and proximate result of such actions.

   *Answer by Williams:* Denied.

187. As a result of the customs and policies of the COB, the BSC, and the Governing Board, Joseph suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

   *Answer by Williams:* Denied.

## JOSEPH DOE'S CLAIM FOR VIOLATION OF TITLE IX – 20 U.S.C. §1681 – CITY OF BOSTON

188. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

   *Answer by Williams:* The defendant incorporates and realleges her preceding answers.

189. As a result of his gender-nonconforming status and appearance, Joseph was subjected to a hostile environment at MHS which was sufficiently severe and pervasive as to compromise and interfere with the educational opportunities and benefits that should have been available to him.

   *Answer by Williams:* Denied.

190. The staff at the MHS were aware of and participated in the mistreatment of Joseph based on his gender-nonconforming status.

*Answer by Williams:* Denied.

191. The staff at MHS were deliberately indifferent to this mistreatment, and failed to respond in a reasonable manner to the mistreatment.

*Answer by Williams:* Denied.

192. As a result of the actions and inactions of the defendants, Joseph, on the basis of his sex, was excluded from participation in, denied the benefits of, and subjected to discrimination under, an education program and activity that receives federal financial assistance.

*Answer by Williams:* Denied.

### JOSEPH DOE'S CLAIM FOR VIOLATION OF TITLE II, ADA (42 U.S.C. §12101), AND SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. §794) – CITY OF BOSTON

193. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The defendant incorporates and realleges her preceding answers.

194. Joseph suffers from physical, emotional and mental disabilities that substantially limit his ability to engage in major life activities, including his ability to learn in a school environment and to interact with others in that environment.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

195. As a result of the actions and inactions of COB, Joseph was denied the benefits of learning and interacting in the school environment solely by reason of his disabilities. The staff at MHS were deliberately indifferent to Joseph's rights as a disabled person and denied him the opportunity to participate in educational programs and services free from harassment or assault.

*Answer by Williams:* Denied.

### CASEY ROE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 – GAVINS

196. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The defendant incorporates and realleges her preceding answers.

197. At all times relevant to this complaint, Ms. Gavins acted under the color and pretense of law, with the actual and apparent authority of the City of Boston, the Boston School Committee, and the MHS Governing Board.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

198. Ms. Gavins used her authority and position to create a dangerous and unsafe environment at the MHS in which Casey was continually bullied and subjected to physical and mental harm, including but not limited to: disregarding BPS oversight and policies, minimizing safety concerns; creating inadequate plans for Casey's safety; placing Casey in proximity to her tormenters and attackers; suppressing the filing of mandatory incident and bullying reports; placing the blame on Casey for the actions of other children; and creating a situation where Casey and her family were subjected to community retaliation and hostility.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

199. Casey's right to attend school in an environment where bullying was not tolerated and was addressed firmly, promptly and aggressively in a consistent manner was clearly established by M.G.L. c.71 §37O and the BSC and state policies and regulations promulgated in accordance with that statute.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

200. Ms. Gavins acted with deliberate indifference or willful disregard to deprive Casey, under color of law of her rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from intrusion into her bodily integrity and to receive a public education.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

201. The harm suffered by Casey was a foreseeable result of Ms. Gavins' actions, and was a direct and proximate result of such actions.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

202. As a result of Ms. Gavins' actions, Casey suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

## CASEY ROE'S CLAIM FOR VIOLATION OF CIVIL RIGHTS – 42 U.S.C. §1983 - CITY OF BOSTON

203. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

   *Answer by Williams:* The defendant incorporates and realleges all her preceding answers.

204. The COB, BSC, and the Governing Board were deliberately indifferent to or tacitly authorized the wrongful conduct by continuing to permit MHS to exercise autonomy, renewing Ms. Gavins' contract as principal, ignoring, and condoning the unsafe conditions at MHS, including frequent and repetitive assaults on Casey and other students, refusing to take action in response to notice of problems at MHS, including but not limited to the 2015 Coffey report, and by failing to prevent further incidents.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

205. The COB, BSC, and the Governing Board failed to train and supervise their employees, including but not limited to the individual defendants, causing physical and emotional injury to Casey.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

206. The actions and inactions of the COB, BSC and the Governing Board were part of a custom or policy that caused physical and emotional injury to Casey.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

207. As a consequence of the customs and policies of the COB, the BSC and the Governing Board, Casey was deprived, under color of law, of her rights, privileges and immunities under the United States Constitution and the laws of the United States, including the right to be free from intrusion into her bodily integrity and to receive a public education.

   *Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

208. The harm suffered by Casey was a foreseeable result of the customs and policies of the COB, the BSC, and the Governing Board, and was a direct and proximate result

of such actions.

**Answer by Williams:** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

209. As a result of the customs and policies of the COB, the BSC, and the Governing Board, Casey suffered severe and permanent physical and emotional damage, humiliation, emotional distress, mental anguish, and invasion of bodily integrity.

**Answer by Williams:** The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

## CASEY ROE'S CLAIM FOR VIOLATION OF TITLE IX – 20 U.S.C. §1681 – CITY OF BOSTON

210. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

**Answer by Williams:** The defendant incorporates and realleges her preceding answers.

211. As a result of her gender, Casey was subjected to a hostile environment at MHS which was sufficiently severe and pervasive as to compromise and interfere with the educational opportunities and benefits that should have been available to her.

**Answer by Williams:** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

212. The staff at MHS were deliberately indifferent to this mistreatment, and failed to respond in a reasonable manner to the mistreatment.

**Answer by Williams:** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

213. As a result of the actions and inactions of the defendants, Casey, on the basis of her sex, was excluded from participation in, denied the benefits of, and subjected to discrimination under, an education program and activity that receives federal financial assistance.

**Answer by Williams:** The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

## CASEY ROE'S CLAIM FOR VIOLATION OF TITLE II, ADA (42 U.S.C. §12101), AND SECTION 504 OF THE REHABILITATION ACT OF 1973 (29 U.S.C. §794) – CITY OF BOSTON

214. The plaintiff repeats, realleges, and incorporates herein paragraphs 1 through 158 of this complaint as if each were set forth here in its entirety.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

215. Casey suffers from physical, emotional and mental disabilities that substantially limit her ability to engage in major life activities, including her ability to learn in a school environment and to interact with others in that environment.

*Answer by Williams:* The defendant lacks sufficient knowledge to admit or deny the allegations in this paragraph; they are denied unless and until proven.

216. As a result of the actions and inactions of COB, Casey was denied the benefits of learning and interacting in the school environment solely by reason of her disabilities. The staff at MHS were deliberately indifferent to Casey's rights as a disabled person and denied her the opportunity to participate in educational programs and services free from harassment or assault.

*Answer by Williams:* The allegations in this paragraph are not directed to Ms. Williams; if any answer is required, they are denied unless and until proven.

Ms. Williams denies any other allegations in the complaint not specifically answered.

## Affirmative Defenses

1. **Failure to State a Cause of Action.** The complaint does not contain enough facts to state a cause of action against this defendant.

2. **Comparative Fault of Third Parties.** People or entities other than this defendant caused or contributed to the damages plaintiff(s) claim to have suffered. Therefore if any award made in favor of the plaintiff in this case, it must be reduced by an amount equal to the percentage of the fault of others in causing or contributing to the damages as alleged in the complaint.

3. **Apportionment of Fault.** Defendants other than this defendant caused or contributed to the damages plaintiff(s) claim to have suffered. Therefore any award made in favor of the plaintiff(s) in this case must be divided between the defendants so that each pays only his, her or its fair share in relationship to his, her or its amount of fault.

4. **Claim is Barred by Law.** Current law including sovereign immunity and/or qualified immunity prohibits plaintiffs' claims against this defendant.

## Prayer for Relief

WHEREFORE, the defendant Jenerra Williams requests that the court dismiss the complaint, enter judgment in her favor, and grant her all relief that is equitable and just.

**The defendant Jenerra Williams demands a jury trial.**

JENERRA WILLIAMS, Defendant
By her Attorney

Zaheer A. Samee, BBO #667751
Frisoli Associates, P.C.
25 Burlington Mall Rd., Suite 307
Burlington, MA 01803
Tel: 617-494-0200
zas@frisolilaw.com

Date: November 8, 2022

## Certificate of Service

I certify that on November 8, 2022, I served the above *Jenerra Williams' Amended Answer to Amended Complaint* by sending a copy to the following:

*For Plaintiffs*
Elizabeth N. Mulvey
David Suchecki
Crowe & Mulvey, LLP
77 Franklin Street, 3rd Fl.
Boston, MA 02110
**BY ECF**

*For Nakia Keizer*
Samuel Kennedy-Smith
Paul Facklam
Duddy Goodwin & Pollard
446 Main St, 16th Floor
Worcester, MA 01608
**BY ECF**

*For City of Boston*
Lisa Maki
Elizabeth L. Bostwick
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
**BY ECF**

Ayla Gavins
36 Welles Ave.
Dorchester Ctr., MA 02124-3617
**BY U.S. MAIL**

Zaheer A. Samee